# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**STEPHEN H. GOLDMAN,**

            **Plaintiff,**

**-vs-**                                    **Case No.  6:04-cv-725-Orl-28JGG**

**BRACEWELL & PATTERSON, L.L.P.,
NANCY A. WODKA, JOHN R.
BRANTLEY,**

            **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for oral argument on June 28, 2005 on the following motions [transcript

at Docket No. 169]:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION TO STRIKE BERTIL NORDIN'S OPINIONS 1 AND 3 (Doc. No. 95)** |
| **FILED:** | **May 17, 2005** |
| _____ | |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. | |

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS JOSHUA RAFNER (Docket No. 103)** |
| **FILED:** | **May 17, 2005** |
| _____ | |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. | |

## I.      BACKGROUND

The Defendants in this case — the law firm of Bracewell & Patterson, L.L.P. ["Bracewell"], attorney Nancy A. Wodka ["Wodka"], and attorney John R. Brantley ["Brantley"] — represented Plaintiff Stephen Goldman's ["Goldman"] company, Distributed Processing Technology Corp. ["DPT"], during a merger with Adaptec, Inc. ["Adaptec"].  The parties disagree over whether the Defendants also represented Goldman personally during the transaction.

Early in the merger negotiations, Goldman provided DPT's sales projections to Adaptec, the acquiring company.  Goldman asserts that he later learned that those sales projections dramatically overstated DPT's expected sales.  DPT's largest customer, Sun Microsystems, Inc., had told Goldman that it planned to drastically reduce its purchases from DPT.  Docket No. 169 at 22 - 28.  At the time that Goldman signed the merger agreement on December 22, 1999, Goldman knew that Sun Microsystem's had sent DPT an order to stop shipping its products on December 15, 1999, and that the "stop ship" order would have a negative impact on future revenue.  Docket No. 169 at 7 - 14, Docket No. 214 at 17.

According to Goldman, the law firm and attorney Defendants advised him that he need not disclose to Adaptec the revised sales projections on an updated § 2.7 schedule designed to show changed circumstances.  Docket No. 169 at 8, 12.  Goldman also argues that the law firm and attorney Defendants advised him that a disclaimer of projections, § 2.22 of the merger agreement, would bar Adaptec from succeeding on a claim that Adaptec had detrimentally relied on the financial information provided by Goldman — including the never-corrected sales projections.  Docket No. 169 at 7 - 14.

After the merger, Adaptec brought suit against Goldman for failing to disclose the damaging sales information.  An arbitrator sided with Adaptec, finding that the information should have been

disclosed, and that the language of the merger agreement did not prohibit Adaptec from relying on the projections it had received. The arbitrator entered a $50 million damage award against Goldman in favor of Adaptec. Docket No. 2 at 10. On April 23, 2004, Goldman filed suit in state court, accusing the Defendants of legal malpractice, breach of fiduciary duty, and negligent misrepresentation, and demanded damages of $50 million, plus his attorneys' fees. Docket No. 2. On May 14, 2004, the Defendants removed the suit to this Court based on diversity of citizenship. Docket No. 1.

Both sides have retained experts in merger transactions. Defendants have retained Bert Nordin ["Nordin"]. Nordin holds a M.B.A. degree from Northwestern, and has participated in some thirty-five mergers and acquisitions, mostly as primary negotiator. Docket No. 95 at 2 - 3; Docket No. 145 at 1. Similarly, Goldman has retained Joshua Rafner ["Rafner"]. Rafner is an investment banker and former attorney who has been involved in numerous mergers. Docket No. 148 at 5. Goldman moves to strike two of the three opinions that Nordin expressed in his report, Docket No. 95 at 1, while the Defendants move to strike all of the opinions contained in Rafner's expert report, Docket No. 1 at 1-2.

## II.    THE LAW

### A.    EXPERT TESTIMONY

Federal Rule of Evidence 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court set forth the following factors which are to be considered in determining the reliability of scientific expert testimony:

1)    whether the expert's technique or theory has or can be tested;
2)    whether the technique or theory has been subject to peer review and publications;
3)    the known or potential rate of error of the technique or theory when applied;
4)    the existence and maintenance of standards and controls; and
5)    whether the technique or theory has been generally accepted in the scientific community.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). When the expert is testifying as to general principles rather than their application to the facts of the case, Rule 702 requires the following:

1)    the expert be qualified;
2)    the testimony address a subject matter on which the fact finder can be assisted by an expert;
3)    the testimony be reliable; and
4)    the testimony "fit" the facts of the case.

*Id.* The *Daubert* factors may be applied not only to "scientific" testimony, but to all expert testimony.

*Kumho Tire Company v. Carmichael*, 526 U.S. 137, 138 (1999).

## B.    EXPERT LEGAL TESTIMONY

It is not enough that a witness is qualified in some way related to the subject matter at hand. Instead, the witness must have special knowledge about the discrete subject on which he or she is to testify. The function of an expert witness is not simply to draw conclusions, but rather to help the trier of fact understand the evidence and to determine issues of fact by imparting to the trier of fact the benefit of the expert's specialized knowledge.

The United States Court of Appeals for the Eleventh Circuit has held that it would be inappropriate for a lawyer, as an expert witness, to testify before a jury about matters of domestic law (United States law). *United States v. Oliveros*, 275 F.3d 1299, 1307 (11th Cir. 2001). In contrast to

the proof of foreign law, *see* Fed.R.Civ.P. 44.1,[1] domestic law is properly considered and determined

by the Court.  *Oliveros*, 275 F.3d at 1307.  The Court's function is to instruct the jury on the law, and

domestic law is not to be presented through testimony and argued to the jury as a question of fact.  *Id.*;

*see also Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (a witness

may not testify as to the legal implications of conduct; the Court must be the jury's only source of

law).

## III.   APPLICATION

### A.   <u>Nordin</u>

Defendants proffer Bertil Nordin as an expert in the "roles of the client and the attorneys, the

custom and practice of the attorneys and the clients in this kind of merger and transaction."  Docket

No. 169 at 30.  Defendants want Nordin to explain, *inter alia*, "how merger transactions are typically

conducted, what the standard procedures are, what a client's reasonable expectations are with regard

to what the attorney will do."  Docket No. 169 at 30.  Of the three opinions offered by Nordin in his

expert report, Goldman takes issue with the first and third.  Docket No. 169 at 14 - 20.  Nordin's first

opinion is as follows:

> From the perspective of my corporate client experience, Bracewell & Patterson, L.L.P.
> ("BP") fulfilled the reasonable expectations of a client in performing its role as
> corporate counsel for DPT in the merger with Adaptec.

Docket No. 95-3 at 2.  Nordin is not qualified to express the first opinion.

Expert testimony as to the standard of care owed by an attorney during a merger transaction

is, of course, relevant to Goldman's legal malpractice claims.  Nordin is not a lawyer, and cannot

---

[1]Pursuant to Fed.R.Civ.P. 41.1, the Court, in determining foreign law, "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."

opine on the standard of care for lawyers.  Defendants argue that Nordin would express no opinion on the standard of care for lawyers, but rather would state his opinion of what a reasonable client would expect from a lawyer during a merger — the custom and practice.  Docket No. 169 at 31 - 40.

Testimony as to what a client might expect from his lawyer, however, is not relevant to the scope of the duty or to the breach of the duty, and can easily mislead the jury as to the standard of care.  A lawyer's duty of care to his client is not measured by the expectations of his client.  If expectations were the measure, then a criminal defense lawyer could almost never meet his or her duty of care to a convicted client.  A criminal defendant's expectations are often unreasonable — and they have no bearing on the lawyer's duty of care.  Although one might assume that business clients have more reasonable expectations than do criminal clients, client expectations simply are not the standard of care for malpractice.

Nordin summarizes his third opinion as follows:

A reasonable buyer's expectation in the merger transaction would have been that it would receive full disclosure of accurate sales forecasts.  Had Adaptec (or any reasonable buyer) known that Sun's actual forecasted purchases were significantly lower than represented in DPT's forecast, it likely would have either backed out of the deal or negotiated a lower purchase price.  Further, Adaptec likely would not have agreed to a disclaimer, as described by Goldman, of any warranty that DPT was providing the best information that it had available regarding its expected sales and financial performance.

Docket No. 95-3 at 4.  Goldman objects only to that portion of Nordin's third opinion that addresses what Adaptec or a reasonable buyer in Adaptec's position would have done had it received accurate sales projections.[2]  Docket No. 95 at 6-9.

_____

[2]Goldman's motion is styled as an objection to the entirety of Nordin's third opinion, as summarized on page 3 of Nordin's report.  Docket No. 95.  However, the body of Goldman's motion attacks only Nordin's opinion as to what Adaptec would have done if it had received accurate sales numbers.  Goldman does not address Nordin's opinions that a reasonable buyer would expect to receive accurate sales forecasts, or that Adaptec would likely have

Sensing an infirmity, the Defendants offered to modify Nordin's opinion during oral argument. Docket No. 169 at 39 - 43. As revised, Nordin would refer only to what Adaptec would have done, rather than what a reasonable buyer in Adaptec's position would have done. Nevertheless, both the original opinion and the altered opinion fail. It is true that the parties may ask the jury to decide what Adaptec would have done had it received accurate data. Nordin, however, has no information or expertise as to Adaptec, or as to what Adaptec would have done. Nordin's "expert" opinion of what Adaptec would have done is speculative. Similarly, Nordin's "expert" opinion of what a hypothetical reasonable buyer would have done does nothing to assist the jury to understand the evidence or to determine a fact in issue. Docket No. 169 at 48 - 51.

### B.    Rafner

Joshua Rafner received his AB degree from Princeton, and his JD degree in 1982 from Stanford Law School. Since November 2002, Rafner has been Managing Director of Ridgecrest Capital Partners in a mergers and acquisitions and strategic financing advisory firm in California. Rafner was a practicing M&A attorney at O'Melveny & Myers in Washington, D.C., for nine years from 1984 through 1992. Expert Report, Docket No. 126, Tab 2 at 4.

The Defendants challenge the entirety of Rafner's proposed testimony, including his opinions as to: 1.) whether Defendants owed Goldman a fiduciary duty; 2.) whether Defendants breached any fiduciary duty or standard of care owed to Goldman; 3.) whether Defendants' conduct was the cause of Goldman's damages; 4.) whether Adaptec would have proceeded to purchase DPT (and at what price) had Goldman disclosed accurate financial information about DPT prior to closing; 5.) DPT's

---

refused to disclaim any warranty that DPT was providing the best available sales and financial information. Docket No. 95 at 6-9. Accordingly, the Court addresses only the challenged opinion.

value at the time of the merger; and 6.) the value to DPT or Goldman of a deal with another potential merger partner, Q Logic.  Docket No. 103 at 1 - 2.

Rafner may not give his opinion as to whether Defendants owed Goldman a fiduciary duty — whether directly or as a foundation for his other opinions — or whether Defendants breached any such duty.  Docket No. 169 at 58 - 64, 76 - 81.  It is the Court's function to instruct the jury on the law, not the parties through their expert witnesses.  A party cannot present the opinion of an investment banker who used to practice law as to whether Defendants owed Goldman a fiduciary duty, or whether Defendants breached a fiduciary duty or standard of care.  Similarly, a party cannot ask an investment banker who used to practice law to give the jury examples of what conduct does or does not breach the standard.  The standard of care is not a question of fact.  Moreover, the parties cannot offer testimony as to the legal implications of conduct.  The Court is the jury's only source of law.  Docket No. 169 at 102 - 04.

Rafner may not give his opinion as to whether Defendants' conduct was the cause of Goldman's damages, or his opinion as to whether Adaptec would have proceeded to purchase DPT (and at what price) had Goldman disclosed accurate financial information about DPT prior to closing. Docket No. 169 at 65 - 73, 104 - 05.  Although Rafner concedes that he cannot divine what actually would have happened, he opines that no one can claim that Adaptec would have ultimately consummated the merger if Goldman had not withheld the damaging sales projections.  Docket No. 169 at 65 - 73, 82 - 87.  As an investment banker, he has no expertise or experience that allows him to express such an opinion.  Moreover, he has no expertise or experience that allows him to interpret the arbitrator's decision in a way that is helpful to the trier of fact.

Rafner may not give his opinion as to DPT's value at the time of the merger, or as to the value to DPT or Goldman of a deal with another potential merger partner.  At the hearing, counsel for Goldman was unable to explain how Rafner's analysis supported his conclusions.  Counsel stated at the hearing that Rafner's analysis appears at "Dubrowski 684501-3003800" of Rafner's report. Docket No. 169 at 87 - 89.  But Rafner's report [Docket No. 126, Tab 1] ends at "Dubrowski 684501-3003799," and Tabs 2 - 3 to the report contain no scanned documents.  Counsel for Goldman also points to his memorandum [Docket No. 148 at 16] for a summary, and to Plaintiff's Exhibits 1 and 2, "Goldman Composite Exhibit C, Summary of Opinions, Joshua M. Rafner."  Docket No. 169 at 89 - 92, 101 - 02.  Goldman has been unable to show how the analysis in the attachments to Rafner's expert report is sufficient for this Court to determine that Rafner's opinions on value are reliable and not speculative.  Docket No. 169 at 102 - 05.  Rafner's comparative market analysis in the attachments to Exhibit 2 does not convincingly support the conclusions in the body of his expert report, particularly his conclusions about what Adaptec would have done.  Docket No. 169 at 106 - 07.

## V.  CONCLUSION

It is therefore **RECOMMENDED** that Plaintiff's Motion to Strike Bertil Nordin's Opinions 1 and 3 [Docket No. 95] be **GRANTED**.  And it is further

**RECOMMENDED** that Defendant's Motion to Exclude the Testimony of Plaintiff's Expert Witness Joshua Rafner [Docket No. 103] be **GRANTED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking

the factual findings on appeal.

     **DONE AND ORDERED** in Orlando, Florida on September 13th, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable John Antoon II
Counsel of Record
Courtroom Deputy